IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>DAVID JOSEPH VON BARGEN,<br><br>Defendant. | Case No. 1:11-CR-143-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

The Court has before it a motion to suppress filed by defendant Von Bargen. The Court held an evidentiary hearing on May 23, 2012, and took the motion under advisement. For the reasons expressed below, the Court will deny the motion.

**FACTUAL BACKGROUND**

On May 27, 2011, just past midnight, two explosions only minutes apart occurred in Payette, Idaho. The first destroyed a pickup truck and the second, about 10 blocks from the first, destroyed a storage shed full of wood. Both explosions resulted in fires.

About 17 minutes after the second explosion, Payette County Deputy Sheriff Ryan Tatum heard a dispatch message describing a "burglary in progress" at the World's Largest Pawn Shop in Fruitland, Idaho, and the dispatcher related that the alarm company had an audio feed from inside the pawnshop and could hear voices and things breaking.

Memorandum Decision & Order - 1

Deputy Tatum immediately left Payette and started driving down Highway 95 toward Fruitland, about 5 miles away. Deputy Tatum suspected that the fires had been a diversion for the burglary.

Highway 95 runs right through Fruitland. The Fruitland pawnshop faces the Highway and sits just north of where 12th street intersects the Highway. When Deputy Tatum was approaching that corner, and was about 300 yards away, he heard from dispatch that the alarm company had advised that the audio feed from the pawnshop had gone silent. At that same time, he saw a light blue Ford pickup truck pulling onto Highway 95 from the intersection where the pawnshop was located. Only a few minutes had elapsed since the dispatch call about the burglary in progress at the pawnshop.

There were no residences in this area, and the businesses were all closed at his hour, about 12:30 a.m. Deputy Tatum was suspicious of the pickup, so he followed it southbound on Highway 95. His suspicions grew when the pickup drove no faster than 25 mph, despite Highway 95's posted 45 mph limit.

Despite driving close to the rear of the pickup, he could not read the license plate, and concluded that it failed to meet the standard required by Idaho law. He also observed that the pickup had no mud-flaps, a violation of Idaho law in his view because the vehicle had enough ground clearance to trigger the requirement that they be installed.

As he followed the pickup, it turned west off Highway 95 onto NW 3rd Street. Deputy Tatum followed closely, and at 12:31 a.m. activated his patrol car's emergency lights. Instead of pulling over, the driver of the pickup truck kept driving one more block

**Memorandum Decision & Order - 2**

before stopping.

While approaching the pickup, Deputy Tatum shined his flashlight into the bed of the pickup and observed five rifles that appeared to have been thrown haphazardly across a bag in the back of the pickup. He did not need to move anything to see the rifles. He testified that he also saw that the rifles had tags hanging from the trigger guards. While Deputy Tatum did not put this observation about the tags in his initial report, he testified at trial that he recalled seeing the tags on the rifles when he first approached the cab of the pickup. The Court finds that testimony credible.

The driver of the pickup was identified as the defendant Von Bargen. Deputy Tatum directed the three occupants in the cab of the pickup to place their hands on the dash. After back-up Officers arrived, they looked inside a blue duffle bag found in the bed of the pickup. It contained several handguns. The Officers then looked inside the cab of the pickup and found two black ski masks on the floor, and two pair of gloves. They also found two "walkie-talkie type radios" on the seat. There were also two Idaho license plates under the driver's seat bearing the number 1P69212, and they were able to determine that the plates were registered to a light blue Ford F-150 pickup truck assigned to the driver, David Von Bargen. The plates hidden underneath the seat were the lawful plates for the truck they had just stopped. Under some plastic tarps in the bed of the pickup, Officers saw what appeared to be clear glass bottles containing a brown liquid with fabric stuffed down into the bottle with several inches of it hanging out. The Officers testified that the bottles smelled of diesel fuel and something like paint thinner or

Memorandum Decision & Order - 3

other flammable chemicals.

Based on the items found in the vehicle search, the Officers obtained a warrant to search Von Bargen's house, and found component materials similar to those used to construct the Molotov Cocktails found in the back of Von Bargen's pickup truck. The three individuals in Von Bargen's truck were interviewed and gave incriminating statements. Von Bargen now seeks to suppress all of this evidence.

## ANALYSIS

An officer may conduct an investigatory stop of a vehicle based upon "reasonable suspicion." *Terry v. Ohio*, 392 U.S. 1, 20-21 (1968). Reasonable suspicion exists when an officer can "point to specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Id.* "Law enforcement agents may briefly stop a moving automobile to investigate a reasonable suspicion that its occupants are involved in criminal activity." *United States v. Hensley*, 469 U.S. 221, 226 (1985). In order to make an investigatory stop of a vehicle, the officer must have reasonable suspicion that criminal activity is afoot. *United States v. Drake*, 543 F.3d 1080, 1088 (9th Cir. 2008).

The threshold issue here is whether Deputy Tatum had a reasonable suspicion that criminal activity was afoot when he stopped Von Bargen's pickup. The Court finds that he did. Just 3 or 4 minutes after hearing dispatch's notice of a burglary in progress at the Fruitland pawnshop, and just moments after receiving an update that the noise in the pawnshop had ceased, Deputy Tatum saw the pickup leaving the very corner where the

Memorandum Decision & Order - 4

pawnshop was located. Given that there were no residences in the area, and that the business were all closed as it was after midnight, these circumstances would give any officer a "reasonable suspicion" that the pickup was connected with the pawnshop burglary.

What happened next added to this reasonable suspicion: The pickup traveled down Highway 45 at just 25 mph despite the Highway's posted limit of 45 mph. At the same time, Deputy Tatum had the right to pull the pickup over for the mud-flap and license plate violations.

After Deputy Tatum pulled the pickup over, exited his vehicle and approached the pickup from behind, he saw in the pickup's bed – in plain view – 5 rifles with tags attached to the triggers, which would lead a reasonable officer to suspect that the rifles were stolen from the pawnshop. He could see the tags without having to conduct some further search, and thus his plain view of the rifles during this stop can be used to support their seizure. *See [Minnesota v. Dickerson, 508 U.S. 366, 374-75 (1993)](#)* (holding that officers may seize objects in plain view without a warrant if they have a lawful view and right of access to the object, and "its incriminating character is immediately apparent").

At this point, Deputy Tatum's reasonable suspicion ripened into probable cause. An officer who has stopped an automobile legitimately and who has probable cause to believe that contraband is concealed somewhere within it may then conduct a warrantless search of the vehicle. See [*United States v. Ross*, 456 U.S. 798 (1982)](#). That officer may search the entire vehicle, including the trunk and all containers that might conceal the

Memorandum Decision & Order - 5

object of the search. *See Wyoming v. Houghton*, 526 U.S. 295, 301 (1999) (holding that probable cause justifies the warrantless search of every part of a lawfully stopped vehicle and its contents, including closed containers). Thus, the Officers were entitled to open the duffle bag and search the other contents of the pickup truck that led to the discovery of the incriminating evidence sought to be suppressed.

Under these circumstances, the Court finds that the motion to suppress should be denied.

### ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to suppress (docket no. 40) is DENIED.

DATED: **May 25, 2012**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge